## AARON BROWN *versus* DAVID AUSTIN, in Error

A *public agent,* contracting as such, is not personally liable. Costs not allow ed upon reversal of judgment, when judgment *below* ought to have been arrested.

THE defendant in error, who was the original plaintiff in this suit, commenced an action of *assumpsit* against *Brown,* before a justice of the peace for this county, in which he declared, *First,* that *Brown,* at ——, on the 12th day of August, 1797, being indebted to the said *Austin* in the sum of 73 cents, according to the account annexed to the writ, then and there, in consideration there-
[ * **209** ] of, promised the said *Austin* to pay to him the same * sum on demand; and, *secondly,* that the said *Brown,* at ——, on the same day, in consideration that the said *Austin* had, before that time, at the special instance and request of the said *Brown,* travelled other ten miles, and attended another day, as mentioned in said account annexed to the writ, for the purpose of testifying respecting the election of *Joseph Bradley Varnum, Esq.,* as a member of the house of representatives in the congress of the *United States,* (which election was contested by the said *Brown,*) before *Nathan Cushing, Esq.,* one of the justices of the Supreme Judicial Court of the commonwealth of *Massachusetts,* duly authorized by a resolve of congress to take said testimony respecting said election, he, the said *Brown,* then and there promised the said *Austin* to pay

him therefor, on demand, so much money as he therefor reasonably deserved to have, with an averment that he reasonably deserved to have another sum of 73 cents, &c.

The account annexed to the writ was as follows, *viz.*:—

" *Aaron Brown, Esq.*, to *David Austin*, Dr. 1796,
    Sept. 12.  To travel 10 miles, and attendance one
    day as a witness in the cause of the contested
    election of JOSEPH BRADLEY VARNUM, Esq., *the
    said* Brown *being agent for the petitioners in said
    contest*,                                      $0 73."

At the Court holden by the justice before whom the action was commenced, the general issue, *non assumpsit*, was pleaded; and upon the trial, judgment was rendered that *Austin* should recover of *Brown* 73 cents damages and costs of suit.  From that judgment, *Brown* appealed to the Court of Common Pleas, in which Court he had leave to plead double; and *there* further pleaded (protesting that he did not make any such promise as the said *Austin* in his declaration had alleged) that one *Joseph Bradley Varnum, Esq.*, being returned * to serve as a [ * 210 ] representative for the second middle district of *Massachusetts* in the house of representatives of the fourth congress of the *United States of America*, sundry citizens of the same district petitioned the same house of representatives, complaining of the undue and illegal election of the said *Varnum*, and praying that they would proceed to investigate the said election, and take such measures therein as the law of the land and the rights of the citizens in such case required; and that the said house of representatives thereupon, on the *6th day of March*, 1796, by their committee of elections, did voluntarily constitute the said *Brown* agent to investigate the said election, by force of their *resolve* of that date; and that the same house of representatives, by their committee aforesaid, did then also authorize the said *Brown*, by the same resolve, to take depositions touching the said election of the said *Varnum* returned to serve as a representative as aforesaid, before any judge in the said district of *Massachusetts*, he, the said *Brown*, first giving notice to the said *Varnum* of the time and place when and where such depositions should be taken, and that such judge should forward any depositions which might be so taken to congress, at their next session; and that the said *Brown*, in pursuance of the resolve aforesaid, caused the said *Austin* to be duly and legally summoned to appear before the judge, on, &c., to give his deposition touching the said election, &c., and that the said *Austin*, in obedi-

159

ence to *that* summons, appeared before the judge for the purpose aforesaid, which is the same travel and attendance mentioned in the writ and declaration aforesaid of the said *Austin ;* and this the said *Brown* is ready to verify, *without this,* that he promised the said *Austin,* in manner and form as he in his declaration has alleged—

Wherefore, &c. To this plea *Austin* demurred specially, [ * **211** ] assigning * for causes, *First,* that the plea amounted to the general issue, and that the general issue ought to have been pleaded instead of said plea in bar; and *secondly,* that the plea is double, argumentative, insensible and void. And *Brown* joined in demurrer.

The Court of Common Pleas adjudged the plea in bar to be insufficient, and the cause was tried upon the general issue originally joined before the justice. The jury found for the plaintiff, *Austin,* and assessed damages at 73 cents. Upon which the defendant, *Brown,* moved the Court of Common Pleas for a new trial, which was granted by the court. Upon the second trial, in the Common Pleas, the jury being sworn to try the issue, the defendant, *Brown,* demurred to the evidence, but the plaintiff, *Austin,* refused to join in demurrer. (*a*) The court, *there,* overruled the demurrer, and directed the cause to proceed upon the issue. The jury again found for *Austin* damages 73 cents; and judgment was rendered for him according to the verdict, and for costs of suit.

The defendant, *Brown,* filed a bill of exceptions in the Court of Common Pleas, stating that, in the trial of the cause, the plaintiff offered to give in evidence, to maintain the issue, a certain paper attested by *Joseph Hosmer,* to prove that the plaintiff had been duly summoned to appear before *Nathan Cushing, Esq.,* (*the judge who took the depositions,*) to give evidence in manner and form as he, the plaintiff, in his declaration had alleged, and the counsel for the defendant did then and there object to the said court that the said paper ought not to be allowed to be read in evidence, but that a copy thereof, attested by the said *Nathan Cushing, Esq.,* [ * **212** ] * with a copy of the return of the said *Hosmer* thereon, was the only proper evidence to prove said fact; but that the said court did then and there deliver their opinion that the said paper was proper to be read in evidence to the jury in the trial of said cause, and with that opinion left the same to the jury. (*b*)

---

(*a*) As *this* Court, in delivering their opinions upon the writ of error, made no observations respecting the demurrer to the evidence, or the obligation of the plaintiff to join in demurrer, it was not thought necessary to insert the same in the report of the case, nor the arguments of the counsel upon that point.

(*b*) NOTE.—*Hosmer* was sheriff to the county of *Middlesex,* and the paper objected to purported to be a copy of a summons issued by *Nathan Cushing, Esq.,* (the judge,) directed to said sheriff, and requiring him to summon the plaintiff, *Austin,* with others

BROWN *vs.* AUSTIN, in Error.

Upon the writ of error now brought to reverse the judgment of the Court of Common Pleas, the following errors were assigned, *viz.*, *First*, that the declaration is insufficient in law to maintain the action ; *secondly, the same, in substance, which is stated in the bill of exceptions ; thirdly,* that the Court, upon the demurrer to the plea in bar, instead of deciding that the same was insufficient, as amounting to the general issue, ought to have ordered the same to be set aside ; *fourthly,* that, as the defendant did demur to all the evidence given in the trial, the plaintiff ought to have joined in demurrer ; *fifthly,* that the matters given in evidence upon the trial were insufficient in law to maintain the issue on the part of the plaintiff, and ought not to have been left to the jury, but have been *so* decided by the said Court of Common Pleas ; and *sixthly,* the general error.

The defendant in error pleaded *in nullo est erratum.*

*S. Dana* for the plaintiff in error. It appears, from the declaration itself, that *Brown* was acting as agent of the petitioners, and therefore, if *any* action lay in favor of *Austin*, it ought to have been brought against the petitioners, who were the principals, *and not against their agent. If this be not so, [ * **213** ] yet the evidence given was not sufficient to charge *Brown*, because no evidence was given or offered of an *express* promise by him, without which he could not be *personally* liable. As to the error grounded on the bill of exceptions, there is not a more incontrovertible rule than that the best evidence which the nature of the case admits is always to be produced, if possible to be had. The best evidence to prove the fact mentioned in the bill of exceptions, would have been, most certainly, as *there* stated, a certified copy of the original summons, and of the officer's return thereon, under the hand of the judge who issued the summons, and to whom the same was returnable ; and no inferior evidence ought to have been admitted, unless it had been proved that the original was lost or destroyed, which was neither proved nor attempted to be proved, nor, indeed, pretended. But the great point in the cause is, that an agent for the public is not liable to be sued upon contracts made by him in that capacity. (a) Now, it does appear upon this record, that *Brown* was agent for the public. It is expressly averred, and it is not denied or contradicted, that he was appointed, by the house of representatives of the congress of the

therein named, to appear before the judge, for the purpose mentioned in the resolve of congress, on which paper was written, " A true copy—attest, *Joseph Hosmer* sheriff." And it appeared in the record of the case, that he was sworn as a witness on the part of the plaintiff, and testified that he was employed by *Brown* to serve the summons on *Austin* and the other witnesses.

(a) *Macbeath* vs. *Haldimand,* 1 *T. Rep.* 172.—*Unwin* vs. *Wolseley,* ibid. 674.

*United States, agent,* in a subject of great national concern, and in which *Brown* had no more interest than *Austin,* or any other individual in the *Union.* Business of the kind charged in the account annexed to the writ, is supposed to be undertaken from patriotic motives, not from the expectation of pecuniary recompense—especially from the mere agent of the national legislature. At any rate, if a reward was expected or is due, it must be obtained by application for that purpose * to the legislature—to congress—by whose orders the business was performed.

[ * 214 ]

*T. Bigelow* for the defendant in error. If the words " *the said* Brown, *being agent for the petitioners in said contest,*" contained in the account annexed to the writ, had not been inserted, there could have been no doubt in this case. The declaration states that the services were performed at the " special instance and request " of *Brown,* in consideration of which he made the promise. Services performed at the *request* of any person, have always been taken as a *sufficient* consideration for a promise. As the jury have found that *Brown* did promise as alleged, the Court ought to presume that there was an *express* promise proved at the trial ; and if so, then undoubtedly he is *personally* liable. If there were no evidence of an express promise at the trial, the objection ought *then* to have been taken, and it is *now* too late to make such objection. But will the insertion of the word above mentioned in the account annexed, make any difference in the case ? I conceive not. Suppose a note had been given by *Brown*—" for value received in travel and attendance by *Austin,* at my request, to testify in the case of the contested election of *J. B. V., Esq.,* I being agent of the petitioners in said contest, I promise, &c." Can there be a doubt that on such a note *Brown* would have been personally liable ? Most clearly not. If this be so, then the verdict of the jury finding that *Brown* made the promise alleged in the present case, is, in effect, precisely the same as if a verdict had been found in an action brought on such a note as has been supposed to have been given by *Brown.*

It will also be recollected, that, at the time of the transaction, there was no act of congress, as there now is, making provision for the payment, *by the nation,* of expenses incurred in cases like the one * now before the Court. From this there arises a strong presumption that both parties took it for granted that *Brown* was to compensate for their services those persons who at *his instance* had performed any.

[ * 215 ]

THACHER, J. I have had no doubt from the first opening of this case. It appears by the record that the plaintiff in error was acting as the agent of the public. The law is settled that any person act-

ing in that capacity, who makes contracts for the public—contracts in which he has no interest or concern other than as one of the individuals composing the body politic—does not render himself personally liable. The cases cited by the counsel for the plaintiff in error, are express to this point. I think, therefore, that the judgment ought to be reversed.

SEWALL, J. I give my opinion upon only one point in this case—that of the public agency of the plaintiff in error. It appears by the record that *Brown,* in this transaction, was acting as agent for the public, in a business of great national concern. Whenever a person acts as agent for the public, he is not personally liable for contracts made by him in that capacity, nor will it make any difference if the services, &c., as in the present case, were performed at the special instance and request of the person so acting as agent; for although, in common and ordinary cases, the law *implies* a promise and *personal* obligation as necessarily resulting from services performed on request, yet such *implication* never arises where it appears that the request was made by a public agent acting in a public concern. If the defendant in error has any claim, it is on the public; and it might have been, perhaps still may be, fairly presumed that the national legislature would provide for the payment of the witnesses summoned by the agent of the house of representatives.

*SEDGWICK, J. It is, in my opinion, unnecessary to [ * **216** ] decide on the several errors assigned, because there is one conclusive on the merits of the controversy between the parties. But before I proceed to *that,* I would observe, that the court below was, in my opinion, manifestly wrong in admitting the evidence which they did of the existence and service of the warrant, by virtue of which, as it is said, the original plaintiff was summoned to appear before Judge *Cushing.* By that admission, the great and first principle of evidence, *that the best evidence of which the nature of the case will admit, it is to be required,* was violated. No evidence was given that the warrant issued by Judge *Cushing* was lost or destroyed. It was therefore to be presumed that it was in existence; and if so, it certainly ought to have been produced. The security of all we hold dear in society, renders it indispensable that the principle which has been stated should be adhered to, and never departed from. But if the judgment below should be reversed for this cause, the consequence would be that a *venire facias de novo* must be awarded. It is for this reason that the Court have proceeded further in their consideration of the case.

The Court is judicially informed that a number of the electors of the district for which *Joseph P. Varnum, Esq.,* was returned as a

representative to the house of representatives in congress, believing that he was not duly elected, had addressed the *house*, the constitutional and sole judges on that subject. The petition was received and considered, and the house, believing that further evidence was necessary to enable them to form a judgment on the question— a question in which the whole nation was interested—a momentous concern, not of individuals only, but of the public—provided the means of obtaining the evidence. A judge was au- [ * 217 ] thorized to take it, and the plaintiff *in error was appointed the agent to transact the business. This, then, was the business of the nation, originating in an order of the constitutional organ, and necessary to the performance of a trust of the most important nature—not of partial or local concern, but of universal interest. And who shall defray the expense necessarily incident to this transaction ? Shall *Mr. Brown*, who was merely the agent of the public ? Reason and justice forbid it. There is no doubt but that he, by an *express* undertaking, *in his private capacity*, to pay the original plaintiff, might have made himself liable ; and in that case, *he* must, for remuneration, have looked to the government. But there has been no such undertaking, nothing of that kind, in this case. It is to be observed that this was before there was any *act* of congress on the subject, and the question of the liability of the plaintiff in error must be decided from the nature of the thing.

I fully approve of the principles which governed the cases cited by the counsel for the plaintiff in error, by the former of which it was determined that *an officer appointed by the government, treating as agent for the public, is not liable to be sued upon contracts made by him in that capacity;* and by the latter, that *a servant of the public, contracting, by deed, on account of government, is not personally answerable.*

DANA, C. J. The question referred to the Court by this record is, whether an individual, who undertakes to act as agent for the public, is personally liable upon contracts made by him in that capacity, and upon his request. In this case, the subject was of general, national concern—all were equally interested—and it was the duty of every individual to give information on the subject. It has been said that the plaintiff in error was one of the *petitioners* to the [ * 218 ] house of representatives. *If that be true, it does not make it his private concern. If *Mr. Brown* and the other petitioners really believed that the return was illegal, and that sufficient evidence could be adduced to prove the fact, it was their duty to make the representation to the *house*, the constitutional and only judges of the right to the seat, that the subject might

be investigated. This was done, and the *house* appointed *Brown* their agent for that purpose. Ought it not to be presumed that congress would make provision for defraying the expense arising from the investigation? Can it be supposed that the *agent* of the house was to be *personally* answerable for the expenses incurred in the performance of business done by their order? But it is said that the defendant in error performed the services at the *request* of *Brown,* and therefore *Brown* is personally liable. It is undoubtedly true that, in a private, individual concern, services done upon *request* are a sufficient consideration, and the law *implies* a promise to pay for such services. That is not the present case; for although it appears by the declaration that there was a *request* of *Brown,* yet it also appears by the record before the Court that the service was rendered for the public.

Considering the case in this view, that the business was of public, national concern, (and the Court give their opinions on this ground to prevent further prosecutions,) I am of opinion that the action cannot be supported. (*a*)

*Judgment reversed.*

*S. Dana,* for the plaintiff in error, moved for costs. It being mentioned by some of the Court that they did not grant costs upon the *reversal* of judgments *for errors in law,* the counsel said he did not ask for costs of the writ of error, but merely that the Court *here* should give such judgment as the court below ought to have given, viz., for the * costs to which the defendant,   [ * **219** ] *Brown,* would by law have been entitled up to the time of rendering the judgment in the Common Pleas.

To this it was answered, by *Bigelow,* for the defendant in error, that it *now* appeared the court below ought to have arrested the judgment, in which case none are allowed, but each party pays his own costs—

Which was assented to by the Court, and

*Costs not allowed.* (1)

See 1 *Cranch, Rep.* 345, *Hodgson* vs. *Dexter.*

(*a*) [*Tippets* vs. *Walker & Al.* 4 *Mass.* 595.—*Freeman* vs. *Otis,* 9 *Mass.* 272.—*Dawes* vs. *Jackson,* 9 *Mass.* 490.—*Long* vs. *Colburn,* 11 *Mass.* 497.—There is no difference between the agent of an individual and an agent of the government; the question in all cases is, to whom the credit is given. *Rathborn* vs *Budlong,* 15 *Johns.* 1.—*Mott* vs. *Hicks,* 1 *Cow.* 513.—ED.]

(1) It has since been held, that a commanding officer of a vessel of the *United States* cannot maintain an action against a surety of a seaman who has enlisted on board such vessel and deserted, but that the action must be brought in the name of the *United States.* Post, vol. vi. 253, *Bainbridge* vs. *Downie.*

The doctrine that a public agent is generally not responsible for contracts made by him in his public character, was again recognized in the case of *Freeman* vs. *Otis,* vol. vii. 273; but it was there further decided, that, if such agent deny to the govern

ment that he had entered into such contract, and by such interference prevent the party from his remedy as against the government, he is personally liable, as, by his conduct, he in effect disavows his acting in the character of a public agent.